## WINDSOR HATCH *et al. versus* LUTHER WHITE *et al.*

By an indenture of two parts the defendants lease to the plaintiffs a woollen factory, reserving to themselves the right to erect a machine shop near the factory, and the right to connect the machinery in the shop with the wheel in the factory ; "and in case there shall not, at any time, be water sufficient to carry the works of the factory and machine shop together, the lessors are to connect their works with the wheel of the factory so as to use only so much water as is sufficient to carry the wheel of the factory at speed." *Held,* that the lessees were entitled to draw water enough to drive the machinery of the factory at speed, before the lessors could exercise their reserved right of connecting the machinery of their shop with the wheel of the factory.

*Held* also, that in case the lessors should connect their machinery with the factory wheel so as to overload the wheel and prevent it from running at speed, they would not be liable on the indenture, for damages, without notice from the lessees that the wheel was so retarded, this being a fact within the knowledge of the lessees and not of the lessors.

THIS was an action of covenant broken, upon an indenture dated the 25th of March, 1828, by which White and Boyden, the defendants, lease, demise and let to Hatch and Gun, the plaintiffs, the woollen " factory of the said White and Boyden, situated &c., with the privileges and appurtenances thereto belonging ; the said White and Boyden reserving to themselves the right to put and erect a machine shop at the south end of said factory and to occupy and improve the same, to put a wheel into said machine shop of sufficient power to carry on their business as machine makers, and the right to connect the machinery in the shop which they may erect, with the wheel in said factory ; the said Hatch and Gun are to draw the water from the pond connected with said factory, in preference to the grist-mill at the same privilege ; and in case there shall not, at any time during the term hereinafter mentioned, be water sufficient to carry the works of the factory and machine shop together, the said White and Boyden, or their assigns, are to connect their works with the wheel of the said factory, so as to use only so much water as is sufficient to carry the said wheel of said factory at speed ; " to hold for the term of ten years from the 1st of April, 1828, the lessees paying a stipulated rent.

The declaration alleges, that from the commencement of the term, for a long time, viz. for five years, and while there was

not water sufficient to carry the works of the factory and ma-chine shop together, the defendants connected and kept connected, their works in the machine shop, which they had erected at the south end of the factory, and upon the site of the grist-mill, with the wheel of the factory, in such a manner, and so operated the same by that wheel, and so loaded and burdened the same, as to use so much of the water by which t was driven, that there was, at sundry times and at all times, an insufficient supply of water to carry the wheel at speed for the plaintiffs' use ; whereby the plaintiffs were injured in various ways specified ; of all which the defendants during all the time mentioned were notified and well knowing.

At a trial in April, 1837, before *Morton* J., the plaintiffs offered to show, that immediately after the making of the lease the grist-mill was removed and a machine shop erected upon the same site, which since 1832 has been driven by water from the factory pond by a wheel placed in the machine shop, the water from which is discharged by the sluice formerly of the grist-mill ; that from 1823, when the machine shop was erected, until 1832, the defendants occupied the shop and operated their machinery by means of the factory wheel, by connecting their works with the shafting which communicated the motion to the works of the plaintiffs in the factory, and that the defendants attached so much machinery to the shafting during that time, as unreasonably to load the same, and thereby prevent the plaintiffs' works from running at their proper speed, and to strain and impair the works of the factory so as to render frequent repairs necessary and to cause great delays to the plaintiffs. But the judge ruled, that it was not competent for the plaintiffs to recover damages, upon any covenant in the indenture, against the defendants, for attaching so much of their machinery to the factory wheel as to prevent its driving the plaintiffs' works at proper speed, or for any delays thereby occasioned to the plaintiffs. The parties agreed, that if this ruling should not be sustained by the whole Court, a new trial should be granted.

*Barton* and *Washburn*, for the plaintiffs, cited Com. Dig. Covenant, *A* 4 ; *Knower* v. *Emerson*, 9 Pick. 422 ; *Fowle* v. *Bigelow*, 10 Mass R. 379.

Oct. 9th
1837.

*C. Allen*, for the defendants.

PUTNAM J. delivered the opinion of the Court. The defendants contena, that in the lease they have reserved the prior right to take and draw for their machine shop, as much water as would be sufficient to drive the wheel of the woollen factory at speed, so leaving the lessees the right to use what water would remain over and above the quantity that would be sufficient to drive their wheel at speed. And this construction, for the purposes of the trial before the jury, was adopted by the then presiding judge.

On the other hand, the plaintiffs contend, that, in case of an insufficiency of water for both, they are entitled first to draw water enough to drive the machinery of their woollen factory at speed, before the lessors can exercise their reserved right, of connecting the machinery of their shop with the wheel of the leased woollen factory.

And upon consideration, this appears to all of us to be the true meaning of the contract. We think that the lessees had a right to keep their machinery running at full speed, if there should be water enough in the pond to drive it, and were not confined to the surplus water, in case of a deficiency of water for both.

The word " *only* " in the reservation, is to be regarded as indicating in some measure the meaning of the reservation. The defendants lease the factory with the appurtenances, re-serving *only* in case of deficiency of water, so much water as would remain after their demise to the lessees should be satis-fied. The words employed are, " and in case there shall not, at any time during the term therein after mentioned, be water sufficient to carry the works of the factory and machine shop together, the said White and Boyden, or their assigns, are to connect their works with the wheel of the said factory, so as to use *only* so much water as is sufficient to carry the said wheel of said factory at speed." We think the factory wheel was to be kept at full speed at all events ; the lessees were in no event to throw off their belts, or stop their machinery. It was only the surplus power of water which should be enjoyed or was reserved by the defendants.

But the plaintiffs complain that the defendants have connect-

ed the machinery of their machine shop with the factory wheel at times when there was a deficiency of water for both, in such manner as greatly to impede the works of the plaintiffs, and prevent their wheel from running at speed.

Now we all think that this was contrary to the agreement of the parties. The contract is by indenture. This action is for covenant broken. It is not necessary that the defendants should have used the word *covenant* in respect to the particular breach upon which the plaintiffs rely. Any words showing that there was an engagement or promise on the part of the defendants, that the lessees should have a particular use·of the property or premises demised, would be sufficient to support such an action for a breach.

The defendants, in case of deficiency of water for both, agree to take and draw *only so much* water power, from the premises ; if they take more, they violate their agreement, which, being under seal, subjects them to an action of covenant broken.

A new trial is granted, which will proceed upon the construction above given to the lease.

The case was again tried at April term 1838, before *Putnam* J.

The plaintiffs offered evidence tending to show, that the wheel of the factory was so loaded by the machinery of the defendants in the machine shop, that great injury resulted to the plaintiffs by preventing their running their machinery at speed, and by breaking the shafting and gearing by which their works were operated, and that this occurred at different times and frequently between 1828 and the spring of 1833, when the defendants put a new wheel into their machine shop and ceased to run their machinery by the factory wheel. The point reserved had relation to that period.

Evidence was introduced tending to show that the defendants knew of this injury to the plaintiffs' works resulting from overloading the wheel, they being called upon from time to time to repair and actually repairing the breakages thereby occasioned. There was no evidence that the plaintiffs had complained to the defendants of their overloading the wheel ; and in the argument

of the case, much reliance was placed by the defendants upon this want of complaint. The plaintiffs contended, that as the defendants knew the capacity and power of the wheel and the effect of loading it by their machinery, they were liable for any violation of the covenants in the lease, as to loading the wheel and using the water, although no notice or complaint to them were proved ; and further, that if the plaintiffs and the defendants were ignorant of their legal rights in regard to the use of the water, owing to the ambiguous language of the lease, the mere neglect of the plaintiffs to complain to the defendants was no waiver of the legal rights of the plaintiffs to recover damages for the injury they might have sustained.

The jury were instructed, that if there was no waiver of legal right, and the plaintiffs had suffered damage from the overloading, but no notice had been given or complaint been made, the defendants would not be answerable.

The jury returned a verdict for the defendants ; and the plaintiffs excepted to the ruling of the judge.

Oct. 3d, 1838.

*Barton* and *Washburn* said, that against an express covenant, ignorance, or even an act of Providence, is no excuse for nonperformance. 2 Wms's Saund. 422, note ; *Brecknock Co.* v. *Pritchard*, 6 T. R. 750. In the case of damage by the act of another, the party injured has a right of action, although the injury may have been done unintentionally or unwittingly. *Cole* v. *Fisher*, 11 Mass. R. 137 ; *Leame* v. *Bray*, 3 East, 593 ; *Covell* v. *Laming*, 1 Campb. 497 ; Revised Stat. c. 105, § 12.

*C. Allen* and *Merrick*, for the defendants.

Oct. 22d, 1839.

Putnam J. delivered the opinion of the Court. This lease has been construed by the Court to mean, that the defendants were to throw off or disconnect their machinery in the machine shop from the wheel in the factory, when there was not water sufficient to drive the works of the factory and machine shop together at speed : thus giving to the plaintiffs a priority on the happening of the event last mentioned.

The lease was made in March, 1828. White and Boyden, according to their reserved rights, erected their machine shop soon afterwards, and connected their machinery in it with the wheel in the factory. Each party went on occupying in sever-

alty. The plaintiffs occupied the factory and their wheel and machinery in one building ; and the defendants occupied their machine shop and machinery in another building adjoining the factory, coupling it with the wheel in the factory ; and they so continued to operate for five years. After the expiration of which time, viz. in March, 1833, the defendants constructed a new wheel in their machine shop to drive their machinery. No notice or complaint was given during the five years, by the plaintiffs to the defendants, that they so loaded or attached so much of their machinery to the wheel in the plaintiffs' factory, as to prevent its going at speed. This action was commenced on the 14th of October, 1835, seven years after the making of the lease.

The plaintiffs contend, that they have a right to recover damages from the defendants, because they overloaded the wheel in the plaintiffs' factory by the machinery which the defendants attached to it, so as to prevent the wheel from going at speed, at various times between the date of the lease and the putting in of the new wheel, viz. from March, 1828, to March, 1833.

The jury found that the defendants had no knowledge that they were so overloading the wheel which was in the plaintiffs' factory, during that period, and that the plaintiffs never gave any notice, or made any complaint to the defendants, during that period, that they overloaded the wheel.

The plaintiffs contended and requested the judge to instruct the jury, " that as the defendants knew the capacity and power of the wheel, and also the effect of loading the same by their machinery, they were liable for any violation of the covenants in the lease as to loading the wheel and using the water, although no notice or complaint to them were proved. And further, that if the plaintiffs and defendants were ignorant of their legal rights in regard to the use of the water power, owing to the ambiguous language of the lease, the mere neglect to complain to the defendants, was no waiver of the plaintiffs' legal right to recover damages for the injuries which they might have sustained."

The judge proceeded to instruct the jury, on the ground that the parties stood before the Court upon their legal rights, and

that there had not been any abandoning of them, as follows : " that if there were no waiver of their legal rights and the plaintiffs had damage from the overloading, and which was *not known to the defendants, and of which no notice or complaint was given to the defendants, the defendants would not be an swerable ;* otherwise, if the defendants knew of the overloading," &c.

The jury found a verdict for the defendants. And the plaintiffs.have excepted to the instruction.

What then were the legal rights of these parties?

It is a familiar principle, that where one is bound by a cove nant or agreement, to perform any act on the happening of an event within the knowledge of one party and not of the other party, in such case the law excuses the performance of the act until the party claiming shall have given notice to the other party, of the happening of the event upon which the perform ance was to be made.

The rule would be otherwise, if the event or contingency on the happening of which the act was to be done, were known as well to one party, as to the other. In the latter case, the party who is bound to perform, must take notice of the hap pening of the event or contingency, at his peril.

To apply this principle to the case at bar. The fact whether or not the wheel in the plaintiffs' factory was driven *at speed*, was known to them, and not known to the defendants. Th˙ thing to be done by the defendants was, to throw off or discon nect so much of the machinery in their machine shop, from the plaintiffs' wheel, as would enable it to run with speed. They were required to do this when that event happened ; and that event would be known to the plaintiffs and not to the defend ants. The jury found in effect, that the defendants never knew that they attached so much of their machinery to the wheel as to prevent it from running at speed. The wheel was in the plaintiffs' building, under their observation, and also the observation of their workmen. If it did not run at speed, they knew it, but the defendants could not know it. If it did not run at speed, we think the fact should have been made known by the plaintiffs to the defendants, and then it would have been the duty of the defendants to disconnect so much

of their machinery as prevented the plaintiffs' wheel from run
ning at speed. In the absence of any complaint or notice, the
defendants had a legal right to presume that they were not over-
loading the wheel. The injury, if it were caused by the de-
fendants, could have been instantly remedied. They could
have thrown off their machinery and given immediate speed to
the plaintiffs' wheel.

It would seem to be consonant to reason and to the law, that
the defendants should not be answerable under the circumstan-
ces, without notice and complaint on the part of the plaintiffs
or knowledge on the part of the defendants.

The instruction then was not objectionable. Substantially it
was, that admitting the parties stood upon their legal rights, the
plaintiffs having the actual knowledge of a want of speed at the
time it happened (if it ever happened) and the defendants being
ignorant of it, the plaintiffs were bound to give notice to the
defendants of such want of speed, to the end that they should
have an opportunity to give redress immediately by disconnect-
ing their machinery from the wheel in the plaintiffs' factory;
and that in the absence of any such notice, the defendants
might legally presume that they had not given any cause of
complaint.

We think the instruction to the jury was correct, and that
he judgment should be given for the defendants, according to
he verdict.